122 F.3d 1075
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hippolito Nunez GUTIERREZ, Defendant-Appellant.
 No. 96-50314.
 United States Court of Appeals, Ninth Circuit.
 Aruged and Submitted August 5, 1997.
Filed August 29, 1997.
 
 Appeal from the United States District Court for the Southern District of California, Leland C. Nielsen, District Judge, Presiding.
 Before BROWNING, BRUNETTI, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. SUBPOENAS
 
 2
 We reject Gutierrez's contention that the district court abused its discretion by refusing to issue the subpoenas he requested. To obtain a subpoena under Fed.R.Crim.P. 17(b), a defendant must aver facts which, if true, would be relevant to an issue in the case. United States v. Sims, 637 F.2d 625, 627 (9th Cir.1980). The district court need not issue subpoenas that seek cumulative testimony. Id. at 629.
 
 
 3
 Donna Moore's testimony was unnecessary because Gutierrez failed to explain why the frequency with which Mangosing, Vasquez, and Nunez called each other was relevant to any issue in the case.
 
 
 4
 The district court could not determine the relevance of Mark Comment's or Moses Rodriguez's testimony because Gutierrez did not describe the statements about which they would testify.
 
 
 5
 Steven Douglas' testimony that officials had charged Nunez with an unrelated drug offense was not evidence that Nunez had the opportunity to commit the crimes at issue in this case or that Vasquez knew at the time of her arrest that Nunez was a drug trafficker.
 
 
 6
 The district court did not err in refusing to subpoena Raul Ayala. Gutierrez failed to show that Ayala would provide relevant impeachment evidence. Mangosing testified she thought Nunez might have paid Ayala but she was not certain. Gutierrez did not aver that Ayala would testify Mangosing knew Nunez had paid him.
 
 
 7
 Testimony from Lourdes Pulidio, Carlos Tavison, and the Internal Revenue Service that Vasquez lied to them would have been cumulative; there was abundant testimony that Vasquez was frequently untruthful.
 
 
 8
 Gutierrez had no right to call Nunez for the sole purpose of compelling him to invoke his Fifth Amendment privilege before the jury. See United States v. Livacoli, 604 F.2d 613, 624 (9th Cir.1979). Gutierrez did not request immunity for Nunez, and the government, which was under no obligation to grant immunity, gave no indication it would do so.
 
 II. CROSS-EXAMINATION
 A. Vasquez
 
 9
 The district court did not err in limiting Gutierrez's cross-examination regarding the incarcerations of Nunez and David Cardenas. Gutierrez sought to show Vasquez lied about Gutierrez's being the source of the cocaine, but the jury could reach this conclusion only by making the impermissible inference that Nunez and Cardenas acted in conformity with their bad characters and provided the cocaine Vasquez was transporting. See Fed.R.Evid. 404(b). The exclusion of proffered bias or impeachment evidence does not create a Confrontation Clause problem unless it "expose[s] the jury to facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness." Delaware v. Van Arsdall, 475 U.S. 673, 680 (quotation omitted).
 
 
 10
 The testimony was not admissible under United States v. Brady, 561 F.2d 1319 (9th Cir.1977). In Brady, testimony about a witness' prior heroin deals was admissible to prove the identity of the source of the heroin at issue. Id. at 1320. Prior bad acts are evidence of identity when their similarity to the crime charged indicates all the acts must be the handiwork of the same person. See 22 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5246, at 512-13 (1978). Gutierrez does not allege that the drug offenses for which Nunez and Cardenas were incarcerated involved a modus operandi that would identify them as the source of the cocaine in this case.
 
 
 11
 The district court did not err in refusing to allow Gutierrez to elicit testimony that Vasquez had been fired from a bank for stealing. This testimony had limited value as specific-instance evidence of Vasquez's untruthfulness because there was no indication Vasquez lied to perpetrate the theft. See Fed.R.Evid. 608(b).
 
 
 12
 The district court did not err in limiting questions about Vasquez's receiving income from illegal sources. Vasquez admitted that she had been paid to transport drugs. Additional testimony on this subject would have been repetitious and only marginally relevant.
 
 B. Mangosing
 
 13
 The district court did not err in limiting questions about Mangosing's hepatitis immunization; Mangosing's drug use was only marginally relevant.
 
 
 14
 The district court did not err in limiting Gutierrez's questions about whether Vasquez's family disliked Nunez as being, at best, only marginally relevant.
 
 
 15
 The district court also properly limited Gutierrez's questions about how many times Vasquez asked Mangosing to accompany her on the South Carolina trip. Gutierrez was able to test Mangosing's ability to recall by asking questions that elicited more relevant testimony.
 
 III. ADMISSION OF EVIDENCE
 
 16
 Gutierrez's cross-examination of Agent Burke created the misimpression that Burke had conducted a shoddy investigation and had been unable to verify Vasquez's claim that a pager number she said she used to contact Gutierrez actually belonged to him. This selective cross-examination opened the door for the government to introduce Gutierrez's address to show that Burke had substantially corroborated Vasquez's statement. See United States v. Beltran-Rios, 878 F.2d 1208, 1212 (9th Cir.1989); United States v. Segall, 833 F.2d 144, 148 (9th Cir.1987).
 
 
 17
 IV. RESTRICTING TESTIMONY OF DEFENSE WITNESSES
 
 
 18
 The district court did not abuse its discretion when it limited Carlos Juarez's testimony. Vasquez testified that Nunez might have paid Juarez, but she was not certain. Gutierrez argues that Juarez would have provided testimony to impeach Vasquez. However, Gutierrez did not assert in his proffer to the district court that Juarez would provide relevant impeachment evidence because Gutierrez did not say Juarez would testify Vasquez knew Nunez paid him. Moreover, Gutierrez presented other evidence that Vasquez had a motive to lie to protect Nunez by eliciting her admission that Nunez was her boyfriend.
 
 
 19
 The district court did not abuse its discretion in limiting Leticia Vargas' testimony that federal agents had asked her questions about Nunez's possible involvement in this case. This testimony was marginally relevant. The fact that federal agents had investigated Nunez's possible involvement did not show he was actually involved.
 
 
 20
 The district court did not abuse its discretion in limiting Agent Burke's testimony that Vasquez and Mangosing had lied to customs agents. Agent Burke testified they had lied before the district court limited the direct examination. Further testimony to the same effect would have been repetitious.
 
 
 21
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3